# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **SUSAN M. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:12CV2143NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Acting Commissioner denying the application of Susan M. White (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 <u>et</u> <u>seq</u>. Plaintiff has filed a brief in support of the Complaint. (Doc. 17). Defendant has filed a brief in support of the Answer. (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 25).

## I.
## PROCEDURAL HISTORY

On September 27, 2006, Plaintiff filed her application for DIB. (Tr. 86). Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 121-26). After a hearing, in a decision dated June 8, 2009, the ALJ found Plaintiff not disabled. (Tr. 86-93). Plaintiff filed a request for review with the Appeals Council, which remanded the matter to the ALJ for further consideration. (Tr. 94-97). After a second hearing,

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

by decision dated January 4, 2011, the ALJ found Plaintiff not disabled.  (Tr. 101-115). The Appeals Council denied Plaintiff's request for review.  (Tr. 1-5).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984).

"Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal. See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. See Krogmeier, 294 F.3d at 1022. See also Eichelberger, 390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be

produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ

need only acknowledge and consider those factors.  See id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible.  See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons.  See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v.

Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff alleged she was disabled due to lower back pain, depression, and anxiety (Tr. 64, 67, 73), and that she became disabled on April 7, 2006 (Tr. 258). Plaintiff testified at the second hearing that some of her medications made her dizzy and some made her tired; in an 8-hour day she would typically spend 5-6 hours in a recliner or laying down; and she could not make it through a whole day without having to do so. (Tr. 21). She also testified that, since the first hearing, her depression had gotten "a little worse; she had difficulty concentrating and remembering and had a hard time dealing with stress; she had migraine headaches once a month; while she had problems with just her right shoulder at the time of the prior hearing, she was having problems with both shoulders; and she was told she had this pain due to arthritis. (Tr. 23-25).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2011, and she had not engaged in substantial gainful activity since April 7, 2006, her amended alleged onset date. As for the severity of Plaintiff's impairments, the ALJ first noted that Plaintiff had the severe impairments of obesity, ankylosing spondylitis, chronic lumbar pain, osteoporosis, and depression, but subsequently found, after addressing any possible

consequences of her obesity, that Plaintiff's obesity was not a severe impairment. The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment and that Plaintiff had the RFC to perform sedentary work as defined in the Act, with the following specific limitations: Plaintiff could lift and/or carry up to 10 pounds occasionally and up to 5 pounds frequently; she could stand and/or walk for up to two hours in an 8-hour workday; and she could sit for up to 6 hours in an 8-hour work day; she could occasionally climb stairs and ramps; she could not climb ropes, ladders, or scaffolds; and she had to avoid concentrated exposure to extreme heat or cold, noise, or vibrations. Finally, the ALJ found Plaintiff retained the ability to understand, remember, and carry out at least simple instructions and non-detailed tasks; demonstrate adequate judgment to make simple work-related decisions; adapt to routine, simple work changes; and perform repetitive work according to set procedures, sequence, or pace. He also found Plaintiff retained the ability to perform some complex tasks. The ALJ concluded that Plaintiff was unable to perform past relevant work; based on the Medical-Vocational Guidelines and the testimony of a VE, considering Plaintiff's age, education, work experience, and RFC, there was work existing in significant numbers in the national economy which Plaintiff could perform; and, therefore, Plaintiff was not disabled within the meaning of the Act.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because, when determining her RFC, he failed to account for her moderate limitation in regard to maintaining concentration, persistence, and pace (CPP); the ALJ found both that her obesity was severe and that it was non-severe; the ALJ failed to properly consider the opinion of medical expert, Dr. Alex, regarding her obesity; the ALJ failed to find her obesity was a severe impairment; and the ALJ improperly considered her credibility. For the following reasons the

court finds Plaintiff's arguments without merit, and that the ALJ's decision is based on substantial evidence.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including Plaintiff's RFC.  See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010).  As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ.  See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence.  Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995).

Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make.  See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000).  See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is

recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996). In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710, 714 (8th Cir. 2003). See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that objective medical evidence did not support Plaintiff's claims regarding the severity of her impairments. See 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when evaluating symptoms); Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary); see also Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (holding that while an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. §§ 416.908, 416.929).

In regard to the objective medical evidence, although Plaintiff asserted that she had trouble lifting overhead due to shoulder pain (Tr. 25, 110), on February 14, 2006, Gary Sides, D.O., reported that, on examination, Plaintiff had "full range of motion [in the] left arm with good adduction, internal and external rotation, grip and motor [were] also symmetrical." Her cervical range of motion was "fairly intact with left and right rotation 75 degrees, flexion and

extension [being] somewhat limited." (Tr. 319). On November 14, 2007, when Plaintiff presented with shoulder pain, Dr. Sides reported that Plaintiff's cervical range of motion and her clavicle were intact; she had "no AC pain"; she had "some mild erythema in this area" and no evidence of rupture; she had good strength in her biceps; her range of motion was intact with discomfort over the biciptal tendon; and she had forward flexion to 160 degrees. (Tr. 612). On July 26, 2010, Krishnappa Prasad, M.D., reported that, on examination, in both her right and left upper extremities, Plaintiff had "normal inspection/palpation, ROM, muscle strength and tone, and stability." (Tr. 888).

Although Plaintiff asserted limitations due to back pain, an April 2006 MRI showed no evidence of "critical spinal stenosis or large disc protrusion." (Tr. 343). In June 2007, Plaintiff's muscle power and tone were normal; her heel-to-shin testing was normal; and her gait was normal. (Tr. 543). When Plaintiff presented complaining of chronic lumbar pain, on July 11, 2008, Dr. Sides reported that Plaintiff's deep tendon reflexes were symmetrical in her lower extremities and her ambulation was intact. (Tr. 614). The impression from an August 5, 2008 MRI of the lumbar spine was degenerative disc disease at L4-5 and L5-S1, L4-5 broad based disc herniation, resulting in moderate to severe left foraminal stenosis; no central canal or right foraminal stenosis; mild bilateral foraminal stenosis at L5-S1, but no significant central canal stenosis. (Tr. 551). Ravi V. Shitut, M.D., reported that review of Plaintiff's August 2008 MRI showed that Plaintiff "essentially" had "minor degenerative disc disease of the lower lumbar spine. (Tr. 781). On June 2, 2009, Dr. Naushad reported that Plaintiff had a "mild" limp while walking; she had moderate lumbar and hip tenderness, active range of motion, and moderate tenderness in the sacral spine. (Tr. 729). Xiaohui Fan, M.D., reported, on July 28, 2009, that Plaintiff had normal range of motion, muscle strength, tone, and stability, in both the cervical

and thoracic spine; and she had tenderness in the lumbar spine bilaterally, which was diffusely moderate on both the left and right; and she had active range of motion, although her extension was restricted. (Tr. 737). In March 2010, Steven Kurzweil, M.D., reported that Plaintiff's extremities were warm and she had full range of motion. (Tr. 772). On April 13, 2010, Ravi Shitut, M.D., reported that Plaintiff had postural hyperlordosis of the lumbar spine, which "quickly correct[ed] when she ben[t] forward"; her straight leg raising was negative bilaterally; her sensory, motor, and reflex examination of the lower extremities was normal; and she had no atrophy. (Tr. 780). Dr. Prasad reported, in July 2010, that he found no evidence of muscle spasms in Plaintiff's back, although Plaintiff had moderate tenderness in her back. (Tr. 888).

As for Plaintiff's allegation that she suffered migraine headaches, she was hospitalized at Jefferson Memorial Hospital in June 2007 for a migraine. An electrocardiogram was normal and showed normal sinus rhythm, and a CT scan of the head was normal. (Tr. 537, 541).

As for the severity of Plaintiff's mental impairment, although Plaintiff frequently reported she was "sad" or depressed in 2008 and 2009 (Tr. 643, 647, 651, 655, 659, 662, 670, 695, 705, 710, 714), in June 2009, Dr. Naushad reported that Plaintiff was fully oriented; her immediate, recent, and remote memory seemed normal; and her "capacity for sustained mental activity and abstract thinking [was] within normal limits." (Tr. 729). Dr. Fan reported, in January 2010, that a neurologic examination showed Plaintiff was oriented to time, place, person, and situation; her immediate, recent, and remote memory seemed normal; her language was intact; her fund of knowledge was within normal limits; and her "capacity for sustained mental activity and abstract thinking" was "within normal limits." (Tr. 909). In March 2010, Steven Kurzweil, M.D., reported that Plaintiff was alert and oriented; her mood was appropriate; and her affect was normal. (Tr. 772). Dr. Prasad reported, in April 2010, that Plaintiff's

psychiatric system was "negative." (Tr. 871). In March and June 2010, he reported that Plaintiff had a normal level of consciousness, orientation, judgment, insight, memory, mood, affect, language, fund of knowledge, and capacity for sustained mental activity. (Tr. 894, 902). In July and August 2010, Dr. Naushad reported that Plaintiff's family and social relationships were better; her mood was better; and her overall functioning was "OK." (Tr. 845, 889).

Second, the ALJ considered that Plaintiff worked with her alleged impairments. (Tr. 111). Indeed, Armin Rahimi, M.D., reported, in July 2006, when Plaintiff presented with back pain radiating down her legs and increased pain with standing and walking, that she was currently working at Wal-Mart. (Tr. 111, 348). When a claimant has worked with an impairment, the impairment cannot be considered disabling without a showing that there has been a significant deterioration in that impairment during the relevant period. See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990). See also Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("[D]espite suffering from what she calls "extreme fatigue," Van Vickle continued working for over four years.").

Third, the ALJ found Plaintiff's work history was a neutral credibility factor as her work history was somewhat consistent, although she earned generally low wages. (Tr. 113, 251).

Fourth, the court notes that Dr. Naushad and Dr. Fan recommended Plaintiff continue with heat and ice treatments and to reduce her weight, and Dr. Prasad recommended ice, heat, home exercise, and smoking cessation. (Tr. 730, 889, 907). Also, Dr. Shitut reported that losing weight and general conditioning would improve Plaintiff's "overall pain pattern." (Tr. 781). Conservative treatment is consistent with discrediting a claimant's allegation of disabling pain. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998).

Fifth, as considered by the ALJ, in September and October 2010, Dr. Naushad reported that Plaintiff said she had "somewhat improved" back pain with medication. (Tr. 109-10, 879-81, 884-86). Also, when Plaintiff presented to Jefferson Memorial Hospital, in June 2007, for migraine, she "significantly" improved after being given Toradol. Upon discharge, her headache had resolved. (Tr. 545). If an impairment can be controlled through treatment or medication, it cannot be considered disabling. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997).

Sixth, although Dr. Shitut noted that Plaintiff used a cane, he further noted that she also walked without a cane and did "not do all that bad either." (Tr. 780). The failure to use an assistive device detracts from a claimant's credibility. See e.g., Gonzales v. Barnhart, 465 F.3d 890, 895 (8th Cir. 2006).

Seventh, the ALJ considered Plaintiff's daily activities, including her testimony that she did light laundry, dishes, and dusting, and her stating, in a Function Report, that she did laundry and cleaning; she left the house one to two times a day, either driving herself or riding with someone else; and she shopped for groceries, clothing, and household items one to three times a week. (Tr. 113). Significantly, as stated above, Dr. Naushad reported, in July and August 2010, that Plaintiff was "overall functioning ok," in regard to activities of daily living. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Clevenger v. Soc. Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009) (cases send mixed signals about significance of daily activities, but noting claimant reported she engaged in an array of activities; it was not unreasonable under case law for ALJ to rely on this evidence to infer claimant's assertion of disabling pain was not entirely credible); Pirtle v. Astrue, 479 F.3d

931, 935 (8th Cir. 2007) (claimant's ability to homeschool her two children was inconsistent with allegation of disability); Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a claimant's] subjective complaints and [her] activities diminish [her] credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The Eighth Circuit has specifically noted that a claimant's ability to homeschool her two children was inconsistent with her allegation of disability. See Pirtle v. Astrue, 479 F.3d 931, 935 (8th Cir. 2007). In conclusion, the court finds that the ALJ's credibility determination is based on substantial evidence.

B.      **Plaintiff's RFC and a Mental Impairment:**

Plaintiff argues the ALJ's RFC determination failed to account for her difficulty with concentration, persistence, or pace.

The court first notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires
> documentation of a medically determinable impairment(s), consideration of the

degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

The Commissioner has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. 20 C.F.R. § 404.1520a. A special procedure must be followed at each level of administrative review. See Pratt v. Sullivan, 956 F.2d 830, 834 n.8 (8th Cir. 1992) (per curiam).

The mere existence of a mental condition, however, is not per se disabling. See Dunlap v. Harris, 649 F.2d 637, 638 (8th Cir. 1981). The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. This Regulation states that the steps set forth in § 404.1520 also apply to the evaluation of a mental impairment. § 404.1520a(a). However, other considerations are included. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. 20 C.F.R. § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1520a(b)(1).

If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. 20 C.F.R.§ 404.1520a(b)(1). The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. 20 C.F.R. § 404.1520a(c)(2). Those areas are: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings. 20 C.F.R. § 404.1520a(c)(3).

The limitation in the first three functional areas of activities of daily living (social functioning and concentration, persistence, or pace) is assigned a designation of either "none, mild, moderate, marked, [or] extreme." 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in regard to episodes of decompensation is determined by application of a four-point scale: "[n]one, one or two, three, four or more." Id. When "the degree of []limitation in the first three functional areas" is "none" or "mild" and "none" in the area of decompensation, impairments are not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." 20 C.F.R. § 404.1520a(d)(1). When it is determined that a claimant's mental impairment(s) are severe, the ALJ must next determine whether the impairment(s) meet or are equivalent in severity to a listed mental disorder. This is done by comparing the medical findings about a claimant's impairment(s) and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. See 20 C.F.R. § 404.1520a(d)(2). If it is determined that a claimant has "a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing," the ALJ must then assess the claimant's RFC. 20 C.F.R. § 404.1520a(d)(3).

The court further notes that 20 C.F.R. Ch. lll, Pt. 404, Supt. P, App.1 § 12.00(a) states, in relevant part, that:

> The evaluation of disability on the basis of mental disorders requires documentation of a medically determinable impairment(s), consideration of the degree of limitation such impairment(s) may impose on your ability to work, and consideration of whether these limitations have lasted or are expected to last for a continuous period of at least 12 months.

Pursuant to these requirements, the ALJ considered that when Plaintiff was hospitalized in June 2007, she reported sleeping poorly due to back pain, but did not allege depression or anxiety. The ALJ also considered that Plaintiff testified she was not receiving outpatient

treatment from a mental health professional, which would be expected if her symptoms were as severe as she claimed.  See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (a lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility).  The ALJ additionally considered treatment notes from Dr. Prasad and Dr. Naushad, as discussed above, which indicated Plaintiff's family and social relationships, mood, sleep patterns, and overall functioning were getting better.

The ALJ further considered hearing testimony from James Reid, Ph.D., a clinical psychologist, who reviewed the medical records and who listened to Plaintiff's hearing testimony.  Dr. Reid testified that a total of four symptoms must be exhibited for a finding that Listing 12.04 (the listing for anxiety related disorders) are met, and that Plaintiff reported, at most, three depression related symptoms: difficulty remembering, difficulty sleeping, and anxiety.  (Tr. 112).  The ALJ then considered that Dr. Reid opined that Plaintiff had no more than mild restrictions of activities of daily living, no limitation in social functioning, and moderate limitation in maintaining concentration, persistence, and pace.  Dr. Reid also testified that there was no evidence of decompensation in a work setting.  Dr. Reid also observed that there was no evidence that suggested more vigorous treatment was ever recommended for plaintiff.  (Tr. 37-41,112).

Upon concluding that Plaintiff had mild restrictions in activities of daily living, the ALJ also considered Plaintiff's description of her daily activities.  He concluded Plaintiff had no difficulties in the area of social functioning, noting that Plaintiff did not allege difficulty in this area.  With regard to concentration, persistence, and pace, the ALJ concluded that Plaintiff had moderate difficulties, based on her responses in the Function Report; the ALJ assumed Plaintiff had moderate difficulties in this area due primarily to intermittent back pain.  He also noted that

she had no episodes of decompensation.  Given that Plaintiff did not have at least two "marked" limitations or one "marked" limitation and repeated episodes of decompensation, the ALJ found paragraph B criteria were not satisfied.  The court finds the ALJ's determination, in this regard, is based on substantial evidence.

To the extent Plaintiff argues the ALJ should have found Plaintiff had more than moderate limitations in regard to concentration, persistence, and pace, the court notes that Plaintiff did not allege such limitations in her Function Report.  In fact she specifically failed to allege difficulties with talking, hearing, memory, concentration, understanding, following instructions and getting along with others, although she alleged she had difficulty completing tasks, and she stated that she could follow written instructions "very well" and spoken instructions "well"; she could get along with authority figures "very well"; she had never been fired from a job because of problems getting along with other people; she could handle stress and changes in routine "well"; and she had no unusual behaviors or fears.  (Tr. 266-67).  The Eighth Circuit holds that it is significant that a claimant has failed to allege disability due to a particular condition.  See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (because claimant did not allege that she suffered from a severe mental impairment, "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (fact that claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed).

In any case, the ALJ did include non-exertional limitations in Plaintiff's RFC which accommodated difficulties in mental functioning, including limiting her to understanding, remembering, and carrying out simple instructions and non-detailed tasks, and simple work-related decisions.  In conclusion, the court finds the ALJ's determination regarding the severity

of Plaintiff's alleged mental impairments is based on substantial evidence and the ALJ's RFC determination is based on substantial evidence to the extent it accommodated Plaintiff's mental impairments.

**C.      Plaintiff's RFC and Obesity:**

As discussed above, the ALJ initially stated that Plaintiff's obesity was not severe and subsequently stated that Plaintiff was moderately obese.  Plaintiff argues that the ALJ's decision is not supported by substantial evidence because he made inconsistent findings regarding the severity of Plaintiff's obesity.  The court finds that Plaintiff's argument is without merit for several reasons.

SSR 02-01p, 2000 WL 628049, at *2-5, states, in relevant part, that:

> Obesity is a complex, chronic disease characterized by excessive accumulation of body fat.  Obesity is generally a combination of factors (e.g., genetic, environmental, and behavioral).  . . .

> We will consider obesity in determining whether:
> The individual has a medically determinable impairment. . . .
> The individual's impairment(s) is severe. . . .
> The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .
> The individual's impairment(s) prevents him or her from doing past relevant work. . . .

> If an individual has the medically determinable impairment obesity that is "severe" as described [above], we may find that the obesity medically equals a listing. . . . We may find in a title II claim, or an adult claim under title XVI, that the obesity results in a finding that the individual is disabled based on his or residual functional capacity (RFC), age, education, and past work experience. However, we will also consider the possibility of coexisting or related conditions, especially as the level of obesity increases.  . .

> There is no specific weight or BAI that equates with a "severe" or a "not severe" impairment.  . . . Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe. . . .

Because there is no listing for obesity, we will find that an individual with obesity may meet the requirements of a listing if he or she has another impairment that, by itself, "meets" the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.

Also, 20 C.F.R. Pt. 404, Subpart P, Appx. 1, § 1.00(Q), provides that:

Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

Consistent with SSR 02-01p, the ALJ did not dispute Plaintiff's allegation that she was obese. Rather, the ALJ considered all Plaintiff's symptoms and medical records, and concluded that there was no pervasive evidence Plaintiff's obesity had caused a reduction in her respiratory capacity, skin disorders, edema, huge calluses on her feet, coronary artery disease, diabetes or other conditions. Although the ALJ did not specifically cite SSR 02-01p, he concluded that there was no evidence that Plaintiff developed any secondary problems associated with obesity. See Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013) (rejecting that that ALJ failed to consider claimant's obesity where ALJ considered SSA's standards for factoring obesity into RFC determinations).

The ALJ also considered that no treating doctor reported that Plaintiff's obesity resulted in severe symptoms and limitations of function which lasted twelve consecutive months, despite compliance. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 1069) ("We find it significant

that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work."). Further, as discussed above in regard to Plaintiff's credibility, it was recommended that Plaintiff exercise. Indeed, the Eighth Circuit found it significant that such a recommendation was made for a claimant who was obese. See Myers, 721 F.3d at 527.

Additionally, the ALJ considered the testimony of Dr. Alex, a medical expert who testified at the hearing that he reviewed Plaintiff's medical records and concluded that with Plaintiff's height she had a body mass index (BMI) of 36, which put her at "mid-level two" and that, in the face of her osteoporosis, it was "a significant risk." Dr. Alex also noted reports regarding Plaintiff's range of motion and results of x-rays and MRIs. He also noted that Plaintiff did not meet the requirements of any listing; a possible cause of her pain was osteoporosis; and Plaintiff's pain should improve with treatment and weight loss. Dr. Alex concluded that Plaintiff should limit exposure to heat and cold, not climb ladders or scaffolds, should do no more than light lifting, and should only occasionally crawl, bend, or kneel. Dr. Alex did not impose any limitations as to Plaintiff's ability to sit. (Tr. 32-33). The ALJ stated that he incorporated limitations which Dr. Alex imposed on Plaintiff in Plaintiff's RFC. (Tr. 113). The court finds that Dr. Alex's opinion was consistent with the record as a whole and that the ALJ gave proper weight to Dr. Alex's opinion.

Although Dr. Sides opined that Plaintiff could perform only part-time sedentary work due to chronic pain (Tr. 607), as stated by the ALJ, it is the job of the ALJ, not a treating doctor, to make an ultimate disability determination. See Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (ALJ need not defer to treating doctor's opinion that claimant is totally disabled "because it invades the province of the Commissioner to make the ultimate disability

determination"); House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007). Although Dr. Sides opined that Plaintiff's ability to sit for a long period was limited, Dr. Sides's notes reflect, as stated above, that Plaintiff's cervical range of motion and her clavicle were intact; she had "no AC pain"; she had good strength in her biceps; her range of motion was intact with discomfort over the biciptal tendon; and she had forward flexion to 160 degrees. (Tr. 612). See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (where treating physician's notes are inconsistent with his RFC assessment, controlling weight should not be given to physician's RFC assessment). Also, medical records of other doctors reflect that Plaintiff had normal range of motion, muscle strength, tone, and stability, in both the cervical and thoracic spine; and she had active range of motion, although her extension was restricted. (Tr. 319, 737, 772). Additionally, Plaintiff's straight leg raising was negative bilaterally; a sensory, motor, and reflex examination of Plaintiff's lower extremities was normal; and she had no atrophy. (Tr. 780). See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000); see also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). The court finds, therefore, that the weight given to Dr. Sides's opinion by the ALJ is based on substantial weight and that the ALJ was not required to give Dr. Sides's opinion controlling weight.

The court also notes that on her Disability Report, Plaintiff did not allege disability due to obesity, but rather to "bulging disk, deterioration of sacroiliac joint." (Tr. 278). See Wall v. Astrue, 561 F.3d 1048, 1062 (8th Cir. 2009) (because claimant did not allege that she suffered from a severe mental impairment, "ALJ's failure to discuss listing 12.05C [was], therefore unsurprising"); Dunahoo, 241 F.3d at 1039 (fact that claimant did not allege depression on his benefits application was significant even though evidence of depression was later developed).

Finally, even if Plaintiff's obesity was severe, it does not mean she was disabled, because the ALJ considered factors relevant to Plaintiff's obesity throughout his opinion. See e.g., Myers, 721 F.3d at 527 (ALJ's opinion was based on substantial evidence where he included limitations resulting from claimant's severe obesity in her RFC); see also Heino v. Astrue, 578 F.3d 873, 881-82 (8th Cir. 2009) (ALJ adequately took into account claimant's obesity where he "made numerous references on the record" to claimant's obesity, noted her weight and height, and included "has a history of obesity" in the hypothetical to the VE); Brown ex rel. Williams v. Barnhart, 388 F.3d 1150, 1153 (8th Cir. 2004) (finding that an ALJ adequately considered obesity when he referred to it when evaluating claimant's case); Givans v. Astrue, No. 4:10-CV-417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. March 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining Plaintiff's RFC). Thus, the court finds that the ALJ's consideration of Plaintiff's obesity was consistent with regulations and case law and that his ultimate RFC determination is based on substantial evidence.

## D.     Hypothetical to VE:

Plaintiff argues that the ALJ failed to sufficiently account for limitations in regard to Plaintiff's concentration, persistence, and pace in the hypothetical which he posed to the VE. As a preliminary matter and as discussed above, the ALJ did limit Plaintiff's ability to understand, remember, and carry out instructions, and to adapt to routine, simple work changes, although he also noted she could perform repetitive work according to set procedures, sequence, or pace. Further, the court has found above that the ALJ's RFC determination, including his accommodation of Plaintiff's mental limitations, is based on substantial evidence.

After determining Plaintiff's RFC, the ALJ concluded she could not perform past relevant work. He, therefore, posed a hypothetical to a VE which described a person of Plaintiff's age and education and with her RFC, and asked if there was other work which she could perform. The VE testified that there was work in the national economy, existing in significant numbers, which Plaintiff could perform, such as information clerk and call-out operator. Although Plaintiff argues the ALJ failed to include in the hypothetical specific limitations as to her concentration, persistence, or pace, the ALJ was only required to include limitations in the hypothetical which he found credible. See Martise v. Astrue, 641 F.3d 909, 927(8th Cir. 2011) ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Guilliams v. Barnhart, 393 F.3d 789, 804 (8th Cir. 2005) (a proper hypothetical sets forth impairments supported by substantial evidence and accepted as true by the ALJ); Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."). The court finds, therefore, that the hypothetical which the ALJ submitted to the VE was based on substantial evidence. See Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (ALJ need not include additional complaints in hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001).

Based on the VE's testimony that there was work which Plaintiff could perform, the court further finds that the ALJ's ultimate decision that Plaintiff was not disabled is based on substantial evidence. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by

substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting <u>Lacroix v. Barnhart</u>, 465 F.3d 881, 889 (8th Cir. 2006)); <u>Robson v. Astrue</u>, 526 F.3d 389, 392 (8th Cir. 2008) (VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 17) is **DENIED**;

**IT IS FURTHER ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 29th day of September, 2014.

 /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE